UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| CRYSTAL AUSTIN, | ) | No. CV-07-0095-AMJ |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | TO GRANT DEFENDANT'S MOTION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on September 17, 2007. (Ct. Rec. 18, 22). Plaintiff Crystal Austin ("Plaintiff") filed a reply brief on September 17, 2007. (Ct. Rec. 25). Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney David Burdett represents the Commissioner of Social Security ("Commissioner"). The parties have not filed a recent consent to proceed before a magistrate judge. (*See*, Ct. Rec. 16). After reviewing the administrative record and the briefs filed by the parties, the undersigned recommends **granting** Defendant's Motion for Summary Judgment (Ct. Rec. 22) and **denying** Plaintiff's Motion for Summary Judgment (Ct. Rec. 18).

REPORT AND RECOMMENDATION ~ 1

1          **JURISDICTION**

2          On February 12, 2002, Plaintiff filed an application for

3    Supplemental Security Income ("SSI") benefits. (Administrative

4    Record ("AR") 77-80). Plaintiff's application for SSI was denied

5    initially and on reconsideration. An administrative hearing was

6    held before Administrative Law Judge ("ALJ") Richard Hines on

7    November 19, 2003. (AR 433-485). On January 30, 2004, ALJ Hines

8    issued a decision finding that Plaintiff was not disabled. (AR

9    241-248). However, on May 4, 2005, the Appeals Council granted

10   Plaintiff's request for review and remanded the matter for

11   additional proceedings. (AR 256-258).[1]

12         On March 21, 2006, an administrative hearing was held before

13   ALJ Mary B. Reed. (AR 486-536). On June 13, 2006, ALJ Reed

14   issued a decision finding that Plaintiff was not disabled. (AR

15   18-32). On February 2, 2007, the Appeals Council denied

16   Plaintiff's request for review. (AR 8-11). Therefore, the ALJ's

17   decision became the final decision of the Commissioner, which is

18   appealable to the district court pursuant to 42 U.S.C. § 405(g).

19   Plaintiff filed this action for judicial review pursuant to 42

20   U.S.C. § 405(g) on March 26, 2007. (Ct. Rec. 1).

21         **STATEMENT OF FACTS**

22         The facts have been presented in the administrative hearing

23   transcripts, the ALJ's decisions, the briefs of both Plaintiff and

24   the Commissioner and will only be summarized here. Plaintiff was

25   _____

26         [1]Plaintiff filed a later application for SSI on March
     26, 2004. The application was denied initially and on
27   reconsideration, and Plaintiff requested a hearing on this
     subsequent claim. In its May 4, 2005 order, the Appeals Council
28   rendered the subsequent application to be a duplicate claim and
     ordered the claims to be associated. (AR 18, 258).

23 years old on the date of the ALJ's June 13, 2006 decision, has
a high school plus education and has past work experience as a
custodian, telemarketer, cashier, nursing assistant and care
giver.  (AR 78, 96, 101).  She alleges disability as of March 31,
2001, due to fibromyalgia, degenerative disk disease, herniated
disks, possible lupus, and severe pain.  (AR 78, 95).  Plaintiff
reported that she stopped working because her illnesses and
condition prevented her from continuing to perform her work
duties.  (AR 95).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999).  "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988).  Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the

[Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment

prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  (AR 20-21).  At step two, the ALJ determined that Plaintiff has degenerative disk disease of the lumbar spine, degenerative disk disease of the cervical spine and obesity, severe impairments, but that she does not have an impairment or combination of impairments which meet or equal a Listings impairment.  (AR 21-24). ///

1    The ALJ found that Plaintiff has the residual functional
2    capacity ("RFC") to perform a range of light exertion level work.
3    (AR 24-30).  She specifically determined that Plaintiff could
4    lift/carry and push/pull up to 20 pounds occasionally and 10
5    pounds frequently; sit, stand and walk, with normal breaks, six
6    hours out of an eight hour day; climb ramps and stairs
7    occasionally; avoid ropes, ladders and scaffolding; balance
8    frequently; kneel, stoop and crouch occasionally; avoid crawling;
9    reach overhead occasionally; avoid activities requiring the neck
10   to be extended backward; and avoid extreme cold, humidity, wetness
11   and unprotected heights.  (AR 30).

12       At step four of the sequential evaluation process, the ALJ
13   determined that Plaintiff has no past relevant work.  (AR 30-31).
14   At step five, based on the testimony of the vocational expert and
15   considering Plaintiff's age, educational background, work
16   experience and RFC, the ALJ concluded that Plaintiff could perform
17   work as an assembly worker, production inspector and checker, and
18   hand packer, jobs that exist in significant numbers in the
19   national economy.  (AR 31-32).  Accordingly, the ALJ determined at
20   step five of the sequential evaluation process that Plaintiff was
21   not disabled within the meaning of the Social Security Act.  (AR
22   31-32).

23                              **ISSUES**

24       Plaintiff contends that the Commissioner erred as a matter of
25   law.  She specifically argues that:

26       1.   The ALJ erred by rejecting the opinions of Plaintiff's
27   treating physician, Eric Sohn, M.D.;
28   ///

REPORT AND RECOMMENDATION ~ 7

1  2.    The ALJ failed to provide proper rationale for rejecting
2  Plaintiff's symptom testimony; and

3  3.    The ALJ erred by not providing germane reasons for
4  rejecting the lay witness testimony of Plaintiff's mother, Teresa
5  Scott.

6  This court must uphold the Commissioner's determination that
7  Plaintiff is not disabled if the Commissioner applied the proper
8  legal standards and there is substantial evidence in the record as
9  a whole to support the decision.

10  **DISCUSSION**

11  **A.    Plaintiff's Credibility**

12  Plaintiff argues that the ALJ failed to provide specific,
13  clear and convincing reasons why her testimony regarding pain and
14  numbness in her extremities was rejected.  (Ct. Rec. 19 at 16-18).
15  The Commissioner contends that the ALJ properly found that
16  Plaintiff's allegations concerning her impairments and their
17  impact on her ability to sustain work-related activity were not
18  entirely credible.  (Ct. Rec. 23 at 7-13).  The Commissioner
19  asserts that the ALJ provided ample reasons that were sufficiently
20  specific to show that she did not arbitrarily discredit
21  Plaintiff's testimony.  (*Id.*)

22  It is the province of the ALJ to make credibility
23  determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
24  1995).  However, the ALJ's findings must be supported by specific
25  cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
26  1990).  Once Plaintiff produces medical evidence of an underlying
27  impairment, the ALJ may not discredit Plaintiff's testimony as to
28  the severity of an impairment because it is unsupported by medical

evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may consider at least the following factors when weighing Plaintiff's credibility:  Plaintiff's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, Plaintiff's daily activities, Plaintiff's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing.  *Id.* at 959.

    The ALJ considered the evidence of record and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible.  (AR 25).  The ALJ discussed the evidence relating to Plaintiff's subjective complaints (AR 25-28) and determined that Plaintiff's testimony was not fully credible and her statements concerning her pain, symptoms and limitations were not persuasive (AR 28).

///

The ALJ noted several inconsistencies in Plaintiff's testimony.  (AR 25-28).  Inconsistencies in a disability claimant's testimony supports a decision by an ALJ that a claimant lacks credibility with respect to her claim of disabling pain. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).  The ALJ indicated that at Plaintiff's administrative hearing on November 19, 2003, Plaintiff testified that she used a walker to assist with her walking due to leg pain and numbness, needed assistance with bathing and using the bathroom, did not drive due to neck pain and numbness in her hands and arms, could only walk one to two blocks and could not get out of bed three days a week due to pain.  (AR 25, 457-475).  However, at the administrative hearing held on March 21, 2006, there was no mention of the use of a walker, no mention of assistance needed for personal care, Plaintiff testified she would walk a mile and that her inability to get out of bed was limited to one to two times per month and Plaintiff stated she rarely drove due to numbness and shooting pain in her legs, but mentioned nothing about her neck or arms. (AR 25, 506-526).  In addition, the ALJ noted that there is no mention in her medical records of the use or recommended use of a walker to assist with ambulation.  (AR 25).

Plaintiff was examined by Fred Price, D.O., on June 26, 2004. (AR 377-385).  As noted by the ALJ, Plaintiff "painted a picture of almost complete inability to perform any activities of daily living to Dr. Price in June 2004 and yet one month prior she told Dr. Sohn her activities of daily living were easier with narcotic pain medication."  (AR 27, 361).  Plaintiff related to Dr. Price that her back, neck, feet, hands, arms and joints in general are

"continuously aching, shooting, tender, exhausting, and tiring,
miserable, and unbearable." (AR 378). Plaintiff reported
"extreme inability to do most activities, including get out of
bed . . . because of extreme subjective pain and discomfort." (AR
379). However, Dr. Price found no active acute or ongoing disease
processes to explain Plaintiff's subjective pain, and concluded
there was no reason why Plaintiff would not be able to perform
medium work activity. (AR 384).

        The ALJ indicated that the record did not show Plaintiff had
made any specific complaints to her treating health care
professionals as she described to Dr. Price; namely, pain
radiating down her arms resulting in difficulty in lifting,
grabbing, manipulating, doing housework and awkward balance with
difficulty standing on her right leg. (AR 27). The ALJ noted
that, in contrast, Plaintiff testified at the March 2006
administrative hearing that she spent at least 40 minutes a day
drawing and one hour a day crocheting. (AR 27 n. 4, 523). The
ALJ indicating that these activities involve extensive use of the
fingers and hands, including grasping and manipulating, and such
activities contradict her alleged arm, hand and finger complaints.
(AR 27 n. 4). The ALJ further noted that in January of 2003,
Plaintiff's subjective complaints consisted of neck pain radiating
into her arms with the left arm worse than the right arm. (AR 26,
212). However, this statement is inconsistent with Plaintiff's
testimony at the administrative hearing in March of 2006 that her
right arm symptoms are more intense and frequent. (AR 26, 510).
///
///

The ALJ also noted that while Plaintiff has described her cervical, lumbar and right leg pain as constant and a loss of balance, Dr. John J. Demakas' April 28, 2005 examination findings did not support these complaints. (AR 25-26, 416-420). Dr. Demakas noted Plaintiff's gait and station were normal, she was able to toe and heel walk, do toe raises and knee bends and tandem walk without difficulty, and, while lumbar and cervical flexion, extension, lateral bending and rotation were noted as limited secondary to pain, all other musculoskeletal tests were found to be negative and neurological findings were normal. (AR 418). Dr. Demakas indicated that Plaintiff's symptoms were in no specific dermatomal pattern, making it difficult to tell where the pain may be emanating, and noted that Plaintiff had a 5/5 Waddell[2] in regard to her lumbar spine. (AR 419).

The ALJ further discussed the effectiveness of medication in alleviating Plaintiff's symptoms. The effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3). The ALJ noted that Plaintiff's medical evaluation in June of 2003 indicated full range of motion in the spine and good relief taking six Oxycodone per day. (AR 26, 224). In November of 2003, Plaintiff reported her pain level went from an 8/10 (with 10 being the worst pain) to a 2/10 while taking Demerol and Soma, her daily activities were easier and she was happier and more active. (AR 26-27, 359). In May of 2004, Plaintiff continued to report her activities of daily living were

---

[2]The ALJ indicated that a positive (5/5) Waddell's test is historically suggestive of malingering. (AR 28).

easier while taking medication (AR 361), contrary to her
complaints to Dr. Price one month later (AR 377-385).  The ALJ
noted that, by October 2005, Plaintiff again reported that her
activities of daily living were "OK" and that her pain levels were
2/10 with her medication and 9/10 without her medication.  (AR 27,
409).  The ALJ determined that since the record did not reflect
that Plaintiff's medications produced any debilitating side
effects and the medications were shown to reduce Plaintiff's pain
level to a more than tolerable level, it could be concluded that
any pain Plaintiff is experiencing on a daily basis is well
controlled with medication and should only have a minimal effect
on her ability to perform work activities.  (AR 27).

The ALJ also referenced the timing of Plaintiff's visits to
her primary care physician, Dr. Sohn, as evidence of motivation
for secondary gain.  (AR 26).  The Ninth Circuit has recognized
that the ALJ may properly consider the issue of motivation in
assessing credibility.  *Matney v. Sullivan*, 981 F.2d 1016, 1020
(9th Cir. 1992).  The ALJ observed that Plaintiff's subjective
complaints of disabling pain and visits to Dr. Sohn would increase
when state disability welfare forms needed to be completed.  (AR
26).  Once the forms were completed, Plaintiff would not return to
Dr. Sohn for several months.  (AR 26).

The ALJ determined that Plaintiff's testimony was not fully
credible and her statements concerning her pain, symptoms and
limitations were not persuasive.  (AR 28).  The ALJ is responsible
for reviewing the evidence and resolving conflicts or ambiguities
in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
1989).  It is the role of the trier of fact, not this court, to

REPORT AND RECOMMENDATION ~ 13

1  resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  The

2  court has a limited role in determining whether the ALJ's decision

3  is supported by substantial evidence and may not substitute its

4  own judgment for that of the ALJ even if it might justifiably have

5  reached a different result upon de novo review.  42 U.S.C. §

6  405(g).  After reviewing the record, the undersigned finds that

7  the reasons provided by the ALJ for finding Plaintiff not fully

8  credible, as outlined above, are clear and convincing and

9  supported by substantial evidence in the record.  Accordingly, the

10 ALJ did not err by concluding that Plaintiff's statements

11 concerning her pain, symptoms and limitations were not persuasive.

12 (AR 28).

13 **B.    Lay Witness Credibility**

14     Plaintiff further contends that the ALJ erred by not making

15 proper credibility findings as to the testimony of Plaintiff's

16 mother, Teresa Scott.  (Ct. Rec. 19 at 18-19).  The ALJ may not

17 ignore or improperly reject the probative testimony of a lay

18 witness without giving reasons that are germane to each witness.

19 *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ

20 shall "consider observations by non-medical sources as to how an

21 impairment affects a claimant's ability to work."  *Sprague v.*

22 *Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) *citing* 20 C.F.R. §

23 404.1513(e)(2).

24     The ALJ discussed the March 20, 2006 letter submitted by Mrs.

25 Scott.  (AR 25, 340).  The ALJ indicated that Mrs. Scott stated

26 she would help her daughter, most of the time, by preparing her

27 meals and doing her laundry unless Plaintiff was having a "good

28 day."  (AR 25, 340).  The ALJ indicated Mrs. Scott's letter

REPORT AND RECOMMENDATION ~ 14

further reported that Plaintiff's husband has had to take time off from work to assist Plaintiff when Mrs. Scott was not available and that Plaintiff could not plan on doing much because she could never tell how she would be on any given day.  (AR 25, 340).  Mrs. Scott's letter stated that Plaintiff had to take one day at a time.  (AR 25, 340).

The ALJ concluded that Mrs. Scott's testimony was based on Plaintiff's self-report of limitations which appeared to be motivated toward secondary gain and to get help from her mother.  (AR 28).  The ALJ indicated that, since she found Plaintiff's self-reports of limitations to be not credible, the statements regarding limitations found in the letter from Plaintiff's mother were not given weight.  (AR 28).

It is significant to note that Mrs. Scott's letter is not consistent with the credible evidence of record.  While Mrs. Scott references Plaintiff's fibromyalgia as a major limiting impairment for Plaintiff, the weight of the credible evidence of record reflects that Plaintiff does not have fibromyalgia.  (AR 23).  Moreover, as more fully discussed in Section C, below, the medical evidence of record does not support greater physical limitations than those found by the ALJ in this case.  *See*, *infra*.  In any event, the ALJ clearly considered the lay witness testimony (AR 25, 28) and appropriately found it lacking in credibility because it appeared to be based on Plaintiff's non-credible subjective complaints (AR 28).  The ALJ properly rejected the testimony of Plaintiff's mother by providing germane reasons.

///

///

REPORT AND RECOMMENDATION ~ 15

1  **C.    Physical Limitations**

2      Plaintiff argues that she is more limited from a physical

3  standpoint than as determined by the ALJ in this case.  (Ct. Rec.

4  19 at 12-16).  Plaintiff specifically asserts that the ALJ failed

5  to provide specific and legitimate reasons for rejecting the

6  medical opinions of her treating physician, Eric Sohn, M.D.  (Ct.

7  Rec. 19 at 12-16).  The Commissioner responds that the ALJ

8  properly evaluated the medical evidence of record and provided

9  appropriate rationale for rejecting Dr. Sohn's opinions contained

10  in his November 18, 2003 report.  (Ct. Rec. 23 at 13-20).

11      The courts distinguish among the opinions of three types of

12  physicians:  treating physicians, physicians who examine but do

13  not treat the claimant (examining physicians) and those who

14  neither examine nor treat the claimant (nonexamining physicians).

15  *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996).  A treating

16  physician's opinion is given special weight because of familiarity

17  with the claimant.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir.

18  1989).  Thus, more weight is generally given to a treating

19  physician than an examining physician.  *Lester*, 81 F.3d at 830.

20  However, the treating physician's opinion is not "necessarily

21  conclusive as to either a physical condition or the ultimate issue

22  of disability."  *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir.

23  1989) (citations omitted).

24      The ALJ examined the evidence of record and determined that

25  Plaintiff has the physical capacity to perform a limited range of

26  light exertion level work.  (AR 24-30).  In making this RFC

27  finding, the ALJ specifically declined to give controlling weight

28  to the opinions expressed in Dr. Sohn's November 18, 2003 form

report (AR 234-237), finding that this report is unsupported by objective evidence, is inconsistent with his own records, appears to have been produced to assist Plaintiff with her disability claim, and is inconsistent with other medical evidence of record. (AR 28-29).

On November 18, 2003, Dr. Sohn filled out a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) form. (AR 234-237).[3] Dr. Sohn marked boxes indicating that Plaintiff could only occasionally lift and/or carry less than 10 pounds, was not able to frequently lift and carry any weight, and could stand and/or walk less than two hours in an eight-hour workday. (AR 234). Dr. Sohn marked that Plaintiff was additionally limited to pushing and pulling less than ten pounds with her upper and lower extremities, could only occasionally climb and balance, and could never kneel, crouch, crawl or stoop. (AR 235). Finally, Dr. Sohn marked that, due to weakness in both hands, Plaintiff could only occasionally reach, constantly feel and never handle or finger. (AR 236).

As noted by the ALJ, this November 2003 report by Dr. Sohn is not supported by his own chart notes. (AR 28). In a progress note dated three days later, November 21, 2003, Plaintiff reported to Dr. Sohn that her pain level was a 2/10 while taking Demerol and Soma, her activities of daily living were easier, and she was happier and more active. (AR 26-27, 358-359). In

---

[3]A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

REPORT AND RECOMMENDATION ~ 17

addition, Plaintiff's medical evaluation in June of 2003 indicated full range of motion in the spine and good relief with her medication (AR 224), and, in May of 2004, it was again reported that Plaintiff's activities of daily living were easier while taking medication (AR 361). On June 17, 2005, Plaintiff was noted to be stable on medications and her activities of daily living were easier.  (AR 408).  In October 2005, Plaintiff reported that her activities of daily living were "OK" and that her pain levels were 2/10 with her medication.  (AR 409).  Dr. Sohn's chart notes do not support the severe limitations he assessed in his November 2003 form report.

Furthermore, as indicated by the ALJ, Dr. Sohn's report is inconsistent with the medical record as a whole.  (AR 28).  In May of 2004, Plaintiff continued to report her activities of daily living were easier while taking medication (AR 361), contrary to her complaints to Dr. Price only one month later (AR 377-385).  In June of 2004, although Plaintiff reported to Dr. Price almost complete inability to perform activities of daily living (AR 378-379), Dr. Price found no active acute or ongoing disease processes to explain Plaintiff's subjective pain, and concluded there was no reason why Plaintiff would not be able to perform medium work activity (AR 384).  State agency reviewing physicians opined in July and September of 2004 that Plaintiff could perform a full range of light exertion work.  (AR 386-397). Dr. Demakas' April 28, 2005 examination found Plaintiff's gait and station were normal, she was able to toe and heel walk, do toe raises and knee bends and tandem walk without difficulty, and, while lumbar and cervical flexion, extension, lateral

bending and rotation were noted as limited secondary to pain, all
other musculoskeletal tests were found to be negative and
neurological findings were normal.  (AR 418).  Dr. Demakas
indicated that Plaintiff's symptoms were in no specific
dermatomal pattern, making it difficult to tell where the pain
may be emanating, and recommended that she "stay away from
surgery as long as possible."  (AR 419).  Again, in October 2005,
Plaintiff reported that her activities of daily living were "OK"
and that her pain levels were 2/10 with her medication.    (AR
409).

      Anne E. Winkler, M.D., Ph.D., testified as a medical expert
at the March 21, 2006 administrative hearing after reviewing the
complete record.  (AR 491-505).  Dr. Winkler testified that
Plaintiff would be able to lift and carry 20 pounds occasionally
and 10 pounds frequently, stand or walk six hours in an eight-hour
day, and sit at least six hours in an eight-hour day.  (AR 496-
497).  She stated that Plaintiff had no specific limits on pushing
and pulling with her extremities but would be limited to only
occasionally reaching overheard with no limits on handling,
fingering or feeling.  (AR 497).  Dr. Winkler opined that
Plaintiff could frequently balance, occasionally climb stairs or
ramps, kneel, stoop, and crouch, and never climb ladders, ropes or
scaffolds or crawl and would need to avoid extreme cold, humidity
and wetness and unprotected heights.  (AR 497).  While Dr. Sohn's
November check-box report concluded that Plaintiff was severely
limited, the weight of the record evidence is contrary to these
findings.
///

The ALJ further noted a lack of any evidence of objective testing for Plaintiff's complaints prior to Dr. Sohn filling out the November form. (AR 29). Dr. Sohn's November 2003 form report, as well as the chart notes preceding the November report, fail to evidence objective testing for Plaintiff's complaints regarding her physical abilities. Accordingly, it is reasonable to conclude that Dr. Sohn's November 2003 report was based, at least in part, on Plaintiff's self-reporting. *See, Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff). As indicated above, the ALJ properly concluded that Plaintiff's statements concerning her pain, symptoms and limitations were not persuasive. *Supra*.

Finally, the ALJ also observed that Dr. Sohn's November report appears to be merely an attempt to assist his patient with her disability claim. (AR 28). When a physician is involved in the application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating his testimony. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). The ALJ noted that there was a dramatic increase in Plaintiff's subjective complaints from December 2001 to May of 2002 when Plaintiff reported to Dr. Sohn to have a state disability form completed. (AR 26). The ALJ observed that Plaintiff's complaints of disabling pain and visits to Dr. Sohn would increase when state disability welfare forms needed to be

///

///

1  completed. (AR 26). Once the forms were completed, Plaintiff

2  would not return to Dr. Sohn for several months. (AR 26).

3      The weight of the evidence of record, as outlined above,

4  supports the ALJ's determination that Dr. Sohn's November 2003

5  report is entitled to no weight. (AR 28). The ALJ provided

6  appropriate rationale, specific and legitimate reasons, for

7  rejecting the November 2003 form report of Dr. Sohn (AR 234-237),

8  and the ALJ's RFC determination is in accord with the weight of

9  the record evidence and free of error.

10                              **CONCLUSION**

11      Having reviewed the record and the ALJ's conclusions, this

12  court finds that the ALJ's decision is supported by substantial

13  evidence and free of legal error. Plaintiff thus is not disabled

14  within the meaning of the Social Security Act. Accordingly, **IT**

15  **IS RECOMMENDED:**

16      1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 18**)

17  be **DENIED.**

18      2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 22)**

19  be **GRANTED.**

20      The District Court Executive is directed to enter this

21  Report and Recommendation and provide a copy to counsel and to

22  the referring judge.

23                              **OBJECTIONS**

24      Any party may object to a magistrate judge's proposed

25  findings, recommendations or report within ten (10) days

26  following service with a copy thereof. Such party shall file

27  with the District Court Executive all written objections,

28  specifically identifying the portions to which objection is being

REPORT AND RECOMMENDATION ~ 21

made, and the basis therefor.  Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The district judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  See 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 73, and LMR 4, Local Rules for the Eastern District of Washington.  The magistrate judge's recommendation cannot be appealed to the Ninth Circuit Court of Appeals; only a district judge's final order or judgment can be appealed.

**DATED** this ____14th____ day of December, 2007.


*S/Cynthia Imbrogno*
CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE